UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17-cv-152-MOC
(5:15-cr-50-MOC-DSC-1)

| | |
|---|---|
| JENNIFER IRENE BROWN,  )  )  Petitioner,  )  )  vs.  )  )  UNITED STATES OF AMERICA,  )  )  Respondent.  )  ) | ORDER |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and the Government's Response, (Doc. No. 3).

### I. BACKGROUND

Petitioner was charged in the underlying criminal case with: Count (1), conspiracy to possess with intent to distribute 50 grams or more of methamphetamine actual and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine; Count (4), possession with intent to distribute a detectable amount of methamphetamine; Count (5), possession of one or more firearms in furtherance of a drug trafficking crime as charged in Counts (1) and (4); Count (6), possession with intent to distribute a detectable amount of methamphetamine; and Count (7), possession of one or more firearms in furtherance of a drug trafficking crime as charged in Counts (1) and (6). (5:15-cr-50, Doc. No. 9).

Petitioner entered a knowing and voluntary guilty plea to Count (1) pursuant to a written plea agreement in which she admitted her factual guilt. (5:15-cr-50, Doc. No. 31 at 1); see (5:15-cr-50, Doc. No. 32). The plea agreement contains appellate and post-conviction waivers. (5:15-cr-

1

50, Doc. No. 31 at 5). The written factual proffer that Petitioner signed and admitted is true provides, in part:

> On May 14, 2014, law enforcement in Catawba County executed a search warrant at 3594 Airport Road, Maiden North Carolina, Defendant Jennifer Irene Brown's residence and recovered approximately **2 grams (20 dosage units) of methamphetamine that was in plain view on the dresser in the master bedroom; $2,645 in cash (most of it in a purse in the master bedroom and some on the dresser), and a Diamond Firearm .380 caliber handgun … in the master bedroom safe**. Brown was not in custody and provided an interview with the law enforcement officials in which she **admitted selling one or two ounces of methamphetamine per week "for some time."**
>
> On November 6, 2014, law enforcement in Lincoln County initiated a traffic stop of Defendant Brown, and found her in possession of about **2.5 grams (25 dosage units) of methamphetamine**. She told them that she had come from her house, so law enforcement obtained and executed another search warrant at her residence, seizing **suspected methamphetamine, various pills, $1,000 in cash, and a stolen 9mm Taurus handgun**….
>
> In February 2015, law enforcement seized **166 grams of 95.7% pure crystal-methamphetamine and a handgun from a co-conspirator** while he was en route back to Catawba County from Georgia. The co-conspirator provided a detailed confession and then consensually monitored and recorded calls to Defendant Brown.
>
> In the confession, the co-conspirator stated that he drove to Atlanta with Brown to pick up methamphetamine starting around Thanksgiving 2014 (2 ounces then 3 trips for 4 ounces each). Starting around Christmas time 2014, they started getting 8 ounces of methamphetamine on six to eight occasions. The total of this methamphetamine is 1,736 grams at the low end.
>
> In the recorded call with Brown, after the co-conspirator explained that he had lost the drugs, she made incriminating statements about the drugs and her involvement in the conspiracy.

(5:15-cr-50, Doc. No. 30 at 1-2) (emphasis added); see (5:15-cr-50, Doc. No. 32 at 3).

The Presentence Investigation Report ("PSR") scored the base offense level as 32 because the offense involved at least 1.5 kilograms, but less than 5 kilograms of methamphetamine. (5:15-cr-50, Doc. No. 45 at ¶ 18). Two levels were added pursuant to U.S. Sentencing Guidelines § 2D1.1(b)(1) because a dangerous weapon including a firearm was possessed. (5:15-cr-50, Doc.

No. 45 at ¶ 19). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 31. (5:15-cr-50, Doc. No. 45 at ¶¶ 25-27). Petitioner had one criminal history point and a criminal history category of I. (5:15-cr-50, Doc. No. 45 at ¶¶ 41-42). The resulting advisory guideline imprisonment range was 120 to 135 months. (5:15-cr-50, Doc. No. 45 at ¶ 74).

The Court accepted the PSR without change and sentenced Petitioner below the advisory guideline range to 63 months' imprisonment on the parties' joint recommendation. (5:15-cr-50, Doc. No. 59); see (5:15-cr-50, Doc. No. 55). Petitioner did not appeal.

Petitioner filed the instant § 2255 Motion to Vacate on August 5, 2017. She argues that counsel was ineffective for failing to object to the § 2D1.1 enhancement which increased her offense level and rendered her ineligible to participate in a Bureau of Prisons Residential Drug Abuse Program ("BOP RDAP"). She argues that the firearm was at her home and she did not possess when she was arrested and it was clearly improbable that the weapon was connected with the offense and was not possessed during the crime. If counsel had objected, her offense level would have been lower, resulting in a shorter sentence and eligibility for participation in the BOP RDAP. The Government argues in its Response that counsel was not ineffective for failing to object because the Court properly applied the weapon enhancement.

**II.    SECTION 2255 STANDARD OF REVIEW**

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance

prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *opinion vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The U.S. Sentencing Guidelines provide that, for drug trafficking offenses, "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1). The application notes provide that "… [t]he enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is **clearly improbable** that the weapon was connected with the offense…." U.S.S.G. § 2D1.1(b)(1), app. note 11(A) (emphasis added). The enhancement is proper when "the weapon was possessed in connection with drug activity that that was part of the same course of conduct or common scheme as the offense of conviction, … even in the absence of proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs…." United States v. Slade, 631 F.3d 185, 189 (4th Cir. 2011) (quoting United States v. Manigan, 592 F.3d 621, 628-29 (4th Cir. 2010); United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997)). "[T]he proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence under Section 2D1.1(b)(1)"). Harris, 128 F.3d at 852. If weapons are found in a place where a drug conspiracy is carried on, the

5

enhancement will apply unless the defendant can "show that a connection between his firearms possession and his narcotics offense was 'clearly improbable.'" Harris, 128 F.3d at 853. The defendant has the burden of showing that a connection between his possession of a firearm and his drug offense is clearly improbable. Slade, 631 F.3d at 189.

Petitioner admitted in the written factual proffer that officers conducted two searches of her residence. During the first search, officers recovered from her master bedroom 20 doses of methamphetamine, $2,645 in cash, and a handgun in the master bedroom safe. During the second search, officers recovered suspected methamphetamine, various pills, $1,000 in cash, and a stolen handgun. Plaintiff also admitted that officers seized from her co-conspirator 166 grams of 95.7% pure methamphetamine and a handgun. Further, Petitioner sold one or two ounces of methamphetamine per week and made incriminating statements to police about her involvement in the conspiracy.

These facts demonstrate that weapons were possessed in connection with drug activity that that was part of the same course of conduct or common scheme as the methamphetamine distribution conspiracy to which Petitioner pled guilty. See, e.g., United States v. Kidd, 527 Fed. Appx. 248, 250 (4th Cir. 2013) (district court did not clearly err by applying 2D1.1(b)(1) where a loaded gun was recovered from a safe in defendant's home along with oxycodone pills, a large amount of cash, ledgers, and MRIs that were used for doctor shopping); Slade, 631 F.3d at 189 (district court did not clearly err by applying § 2D1.1(b)(1) enhancement where defendant was a member of a drug conspiracy and a reliable co-conspirator who interacted with defendant over the course of the conspiracy related his knowledge that defendant "always carried guns" in connection with his drug-trafficking activities). Plaintiff's argument that she did not possess a firearm when she was arrested is irrelevant because concurrent drug and firearm acts are not required for the §

2D1.1(b)(1) enhancement to apply. See Slade, 631 F.3d at 189. Nor has Petitioner demonstrated that the connection between her possession of the guns and the methamphetamine distribution conspiracy was clearly improbable. See, e.g., United States v. Canter, 664 Fed. Appx. 347 (4th Cir. 2016) (defendant did not meet the burden of showing that it was clearly improbable that the shotgun discovered in his vehicle near a safe containing methamphetamine and a significant quantity of cash was connected to the drug-trafficking offense). Counsel cannot be deemed ineffective for failing to raise a meritless objection to the § 2D1.1(b)(1) enhancement that is not supported by the record and would have had no reasonable probability of success had counsel presented it at sentencing.

## IV. CONCLUSION

For the foregoing reasons, the Petitioner's § 2255 Motion to Vacate will be denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: May 21, 2018

Max O. Cogburn Jr
United States District Judge